# Hoeveler *versus* Fleming & Co.

1. Any act of a landlord which deprives his tenant of that beneficial enjoyment of the premises to which he is entitled under a lease, will amount in law to an eviction and suspend the rent.

2. Where repairs are not ordinary but of a character to deprive the tenant of all beneficial enjoyment of the premises, or at least seriously interrupt it while the repairs are in progress, they amount to an eviction and suspend the rent.

3. Magaw *v.* Lambert, 3 Barr 444, followed.

October 15th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1879, No. 146.

Debt by Elizabeth Hoeveler against William Fleming & Co., to recover a quarter's rent.

In April 1873, the plaintiff demised to the defendants for the term of five years, the rent payable quarterly, a building in the city of Pittsburgh. The lease contained the usual covenants. The

[Hoeveler v. Fleming.]

defendants agreed that they would make all alterations and repairs at their own cost, except such ordinary repairs as would make the building tenantable. They also covenanted to deliver up the premises at the end of their time in good and sufficient repair, "reasonable wear and tear and accidents by fire excepted." In March 1877, the premises were so injured by fire that they were untenantable, and defendants vacated them. The insurance company in which the property was insured, with the assent of the plaintiff and without objection from defendants, employed a contractor to make the repairs, and the key was delivered to him. On account of these repairs the building was not in a condition for occupancy until August 1877, when the defendants declining to again occupy the premises, and refusing to pay the rent for the quarter during which the repairs were being made, this action was brought to recover it.

At the trial before Collier, J., the plaintiff asked the court to charge that the evidence was not sufficient to warrant the jury in finding an eviction; that when the insurance company, with the assent of the plaintiff and without objection from defendants, proceeded to repair, the rent was not thereby suspended, and that even if plaintiff had ordered the repairs the defendants would not be released; all of which the court refused.

The defendants submitted the following point, to which is appended the answer of the court:

If the plaintiff, under the provisions of her contract of insurance, directed the insurance companies to proceed to rebuild or repair the premises, and the insurance companies did so proceed and occupy the premises during the three months for which suit is brought, the plaintiff is estopped from recovery in this action.

Ans. "Affirmed, if you believe the entry by the contractor was without the consent of defendants, and that the repairs made were more than the usual, ordinary and necessary repairs."·

Verdict for defendants, when plaintiff took this writ and alleged that the court erred in charging as above.

*H. & G. C. Burgwin*, for plaintiff in error.—To occasion a suspension of rent the rule of law is clear that there must be an eviction or expulsion of the lessee: Bennett v. Bittle, 4 Rawle 339; Pier v. Carr, 19 P. F. Smith 326. To constitute an eviction there must be something of a grave and permanent character done by the landlord, with the intention of depriving the tenant of the enjoyment of the premises. The acts done must clearly indicate an intention on the landlord's part that the tenant should no longer hold the premises: Upton v. Townend, 17 C. B. 30; s. c. 84 E. C. L. R. 30.

The test as to eviction is whether the tenant has been deprived of the beneficial enjoyment of a portion of the estate by the tortious

[Hoeveler *v.* Flemimg.]

act of the landlord: Hayner *v.* Smith, 63 Ill. 430; Leishman *v.* White, 1 Allen 489.

*J. Erastus McKelvy* and *Thomas M. Marshall*, for defendants in error.—The possession of the contractor was the possession of the landlord, and excluded the tenant from the use of the premises and was an eviction: Taylor on Landlord and Tenant, 7th ed., sect. 377; Upton *v.* Greenlees, 17 C. B. 30; s. c. 84 E. C. L. R. 64; Halligan *v.* Wade, 21 Ill. 479; Dyett *v.* Pendleton, 8 Cowan 727; Magaw *v.* Lambert, 3 Barr 444; Briggs *v.* Thompson, 9 Id. 338. If the plaintiff elected that the insurance company should build, repair and restore the premises, the contract of insurance became a building contract, and if, in pursuance of such contract the contractor entered upon the premises for the purpose of repairing, rebuilding and restoring the same, and did repair, rebuild and restore the same, it was a re-occupation of the demised premises by the plaintiff, and was an eviction of the defendants and a rescission of the lease; Morrell *v.* Irving Fire Ins. Co., 33 N. Y. 429; Beals *v.* Home Ins. Co., 36 Id. 522.

Mr. Justice PAXSON delivered the opinion of the court, November 3d 1879.

It is settled by a current of authority that an eviction of a tenant by the landlord of demised premises suspends the rent. The reason of this rule is well stated by Baron Gilbert in his Treatise on Rents, at page 145: "A rent is something given by way of retribution to the lessor, for the land demised by him to the tenant, and consequently the lessor's title to the rent is founded upon this: that the land demised is enjoyed by the tenant during the term included in the contract; for the tenant can make no return for a thing he has not. If, therefore, the tenant be deprived of the thing letten, the obligation to pay rent ceases, because such obligation has its force only from the consideration, which was the enjoyment of the thing demised."

The modern doctrine as to what constitutes an eviction is, that actual physical expulsion is not necessary, but any interference with the tenant's beneficial enjoyment of the demised premises will amount to an eviction in law. Thus in Doran *v.* Chase, 2 W. N. C. 609, this court affirmed the ruling of the court below, that "A landlord's refusal to allow an under-tenant to enter the premises, under threats of suit, whereby the lessee is deprived of under-letting, is such an interruption of the latter's rights as amounts to an eviction." So an eviction of the lessee from any part of the demised premises will suspend accruing rent: Linton *v.* Hart, 1 Casey 193. If the landlord claim and use certain privileges upon the demised premises, against the tenant's consent, he must show a reservation of them, or the rent is suspended: Vaughan *v.*

[Hoeveler *v.* Fleming.]

Blanchard, 4 Dall. 124.    And I apprehend there might be a legal eviction by confining the tenant to the demised premises, as by closing up a way which was his only means of egress and ingress. Any act of the landlord which deprives the tenant of that beneficial enjoyment of the premises to which he is entitled under the lease, will amount in law to an eviction and suspend the rent.

How far the entry of the landlord to make repairs will work an eviction must depend, to some extent, upon the circumstances of each particular case.    When the landlord is bound by the lease to make repairs, and the repairs are merely such as are required by ordinary wear and tear, no difficulty is likely to arise.    And where he is not bound to do so, but makes them for the benefit of the property and the convenience of the tenant, the dangers of a contest are equally remote, as tenants are more willing, as a general rule, to have the property put in order than landlords are to incur the expenditure.    In Pier *v.* Carr, 19 P. F. Smith 326, where the tenant had been sold out by a constable, under a warrant for taxes, and after the sale, the constable had delivered the key to the landlordlord, who put a bill "To Let" upon the premises, and proceeded to have some slight repairs made, it was held there was no eviction.

Where, however, the repairs are not ordinary, but are of a character to deprive the tenant of all beneficial enjoyment of the premises, or at least seriously interrupt it while the repairs are in progress, we have a question presented of a different character. The case in hand comes within this class.    The lease from the plaintiff to the defendant was in the usual form, with the ordinary covenants for the payment of rent.    The tenants were to deliver up the possession at the end of the term, "in good and sufficient repair as when received, reasonable wear and tear and accidents by fire excepted."    The tenants were to have the right to make certain specified alterations, with the stipulation that all alterations and repairs were to be made at their own cost "excepting such ordinary repairs as will make the house tenantable."    During the term the demised premises were partially destroyed by fire.    The third story was burned and a considerable portion of the second story.    It was conceded the fire rendered the premises untenantable and that defendants moved out.    The plaintiff had an insurance upon the building and refused the settlement offered by the insurance company.    Thereupon the company took possession for the purpose of rebuilding, and through their contractor retained the possession from some time in April until about the middle of August.    The repairs were necessarily extensive; a division wall between the demised premises and the adjoining building, belonging to the plaintiff was so far injured as to require it to be taken down and rebuilt.    The plaintiff was upon the premises from time

[Hoeveler *v.* Fleming.]

to time and gave directions as to the repairs.    The present action was for a quarter's rent, during the progress of the repairs.

There is no evidence that the defendants assented to the occupation of the premises for the purpose of rebuilding.    It is clear that by the terms of the lease the defendants were not obliged to rebuild. Accidents by fire were expressly excepted.    And I have as little doubt they would have been responsible for the rent during the term if the plaintiff had been content to let the building stand roofless and scarred by fire during that period.    The lease contained no exoneration from the rent in case of fire.    But the plaintiff, or the insurance company for her, proceeded to rebuild, wisely perhaps, as the injury to the dismantled building from the storms would have been greater than any probable loss of rent. Having proceeded to rebuild for her own interests quite as much as for the convenience of the tenants, and having thereby taken the possession of the demised premises to their entire exclusion, without request or even assent on their part, can she hold them for the rent?    In the somewhat quaint language of Baron Gilbert " the tenant can make no return for the thing he has not."    In Magaw *v.* Lambert, 3 Barr 444, it was held that " if a landlord take possession of the ruins of his premises destroyed by fire for the purpose of rebuilding, without the consent of his tenant, it is an eviction ; if with his assent it is a rescission of the lease, and in either case the rent is suspended."    I am unable to see any substantial distinction between that case and the one in hand.    It is true there was a total destruction of the property in Magaw *v.* Lambert, and only a partial destruction here.    But the partial destruction was so great that the tenant had to move.    A total destruction could have done no more.    But it is said here that the landlord was bound to repair.    I do not so understand it.    Aside from the lease there was no duty upon her to do so, and the lease did not impose any.    In no part of it does the plaintiff covenant to repair.    The most that can be gathered from it is an implication that the defendants were to be allowed the cost of ordinary repairs if they saw proper to make them.    Certainly all other repairs and alterations were to be at their own expense.    We are of opinion that Magaw *v.* Lambert rules this case.

Judgment affirmed.