## RUSSELL v. OLSON.

### (37 L.R.A. (N.S.) 1217, 133 N. W. 1030.)

**Appeal — review of facts — necessity of motion for new trial.**

    1. Questions of fact cannot be reviewed on appeal from a judgment in any action tried by a jury, unless a motion for a new trial was made before the trial court.

---

Note.—A note to this case in 37 L.R.A. (N.S.) 1217, on the question of eviction of tenant by failure to furnish heat, deduces from the authorities there reviewed the broad general rule that the failure of a landlord to furnish heat when he has expressly or impliedly assumed that obligations constitutes eviction of the tenant where the tenant elects to consider it such and surrenders the premises because

**Trial — sufficiency of exceptions to instructions.**

2. Exceptions to a charge of the court must point out some definite or specific defect, Counsel should by his objection, lay his finger on the precise point, or alleged error of the court.

**Appeal — review of facts — necessity of motion for new trial.**

3. In the absence of a motion for a new trial, the finding of the jury upon a controverted question of fact, where competent evidence was given pro and con, must be taken as final.

**Appeal — errors of law in admitting testimony — necessity of motion for new trial.**

4. Errors of law occurring at the trial, by way of admitting testimony, properly objected to, or otherwise, with exception saved, and which are brought on to the record through a statement of the case, will be considered by the court without a motion for a new trial.

**Landlord and tenant — failure to furnish heat — eviction.**

5. A landlord who agrees in his contract with his tenant, during the continuance of the lease, to furnish heat for the proper heating of the building leased, and fails to keep his contract, after having been given notice of the defect and allowed a reasonable time in which to remedy the same, commits acts which in law will be regarded a constructive eviction of the tenant from the premises.

**Landlord and tenant — eviction of tenant — measure of damages.**

6. The contract being silent upon the measure of damages, the statutory rule prevails. The damages, therefore, in this case, should be such as may fairly and reasonably be considered either arising naturally or as according to the usual course of things from such breach of contract itself, or such as will reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. While profits may be considered in proper cases in estimating damages, proof of them must be of a high character, and not such that the jury are left to speculate or guess what, in fact, they are or would be.

**Damages — alleging and proving special damages.**

7. The jury awarded $593.75 special damages. Special damages must be alleged and proven. No testimony in this action appeared warranting such a finding; hence it was error for the court to submit that question to the jury.

Opinion filed June 22, 1911. Rehearing denied December 21, 1911.

thereof; but there are so many elements entering into the decisions that each case must necessarily be determined on its own particular facts.

The general question of the duty and liability of a landlord of apartments as to heating is considered in a note in 37 L.R.A. (N.S.) 1213.

As to what constitutes eviction of tenant generally, see note in 38 Am. St. Rep. 485.

Appeal from District Court, Ward county; *Goss,* J.

Action by T. F. Russell against Olaf Olson. From a judgment for plaintiff, defendant appeals.

Reversed, and new trial ordered.

*L. J. Palda, Jr., John E. Greene,* and *C. D. Baker,* for appellant.

*F. B. Lambert,* for respondent.

, POLLOCK, Special Judge. The defendant rented to plaintiff a certain hotel in the city of Minot. One of the clauses in the contract reads as follows: "The party of the first part (Olson) agrees, during the continuance of this lease, to furnish the heat for the proper heating of the same, from the 1st day of October to the succeeding 1st day of May during each year, from the date hereof." The action is for damages for violation of this condition of the lease. Plaintiff alleges that under the lease he entered upon said premises October 1, 1905, and remained there until October 30, 1906, when he was evicted by reason of the failure of the defendant to furnish heat for said premises. The written lease made by the parties was for and during the terms of five years from October 1, 1905. The damages claimed were: First, for $100 per month from October 1, 1905, to May 1, 1906, $700 in all; second, $1,-000 per year from October 30, 1906, for the remaining four years' term of the lease, total $4,000; third, because he had bought certain furniture especially fitted for the building, and paid therefor $2,000, and which, when moved from the said building, had no value in excess of $500, and on that cause of action claims $1,000 damages. Defendant entered a general denial, except that he admitted making the lease as alleged by plaintiff, and then set forth a counterclaim for damages: First, for putting in partitions and injuring the floors, $100; second, abandoning the place without cause, damage $4,800, being the rental of said premises for the unexpired term; third, taking away the keys of the building, $50; fourth, leaving the premises in a dirty and filthy condition, $75,— making a total of $5,025. A general denial to the counterclaim was set forth in the reply. The cause was tried before the court and a jury, and during the time of the trial plaintiff was permitted to amend his complaint by adding thereto the following: "That said furniture and fixtures were especially adapted to said building and rooms and especially useful therein; that upon plaintiff's eviction from said building as

above alleged there was no other building or rooms in which to place said furniture, and the same were of no value in excess of the sum of $500, and the said plaintiff has sustained loss on said furniture and fixtures by reason of the foregoing in the sum of $1,000." At the close of the case, defendant, moved for a directed verdict, which not only leveled at plaintiff's right to a verdict, but also asked for a verdict in favor of the defendant for $135. This motion was overruled and the ruling properly excepted to. The jury returned a verdict in favor of the plaintiff for $865.75, and the verdict shows that the same was arrived at as follows: Damages to plaintiff on hotel claim, $350; damages to plaintiff on furniture claim, $593.75. As against which the defendant was allowed: For loss of keys, $10, and for dirty condition of the premises when left, $68. Thereafter, certain exceptions were filed to the charge, in the following language only: "Comes now the defendant in the above-entitled action and excepts to the following provisions of the charge of the court, given to the jury in the above-entitled action, covering pages 7 to 16, inclusive, and reading as follows, to wit: . . . " Then follows the paragraphs of the charge excepted to. No grounds for the exception were mentioned. Judgment was thereafter entered in favor of the plaintiff for the sum of $865.75. From the judgment defendant appeals. In the statement of the case are found sixty-seven specifications of error, mostly with reference to the admission of testimony, and directly attacking its character as a proper mode of proving the damages claimed. No motion for a new trial was made, so that the matter comes before this court only to review the errors of law occurring at the trial.

1. Questions of fact cannot be reviewed by this court on appeal from a judgment in any action tried by a jury, unless a motion for a new trial was made in the court below. Rev. Codes 1905, § 7226; McNab v. Northern P. R. Co. 12 N. D. 568, 98 N. W. 353.

In justice to the learned judge who tried this case, it is only fair to suggest that if counsel had made a motion for a new trial, and thus given the court below a chance to review the entire record, it is safe to say that the expense of an appeal would have been saved. The writer hereof, through long experience as a trial court, well knows the difficulties attendant upon a trial, where, as shown by the record herein, more care should have been given to the preparation of the pleadings

and the elimination of all those items, on both sides, which serious reflection would have shown could not have been allowed. While constant demand upon a busy practitioner's time will often excuse lack of the most careful preparation for the actual trial of a case, it will not justify the trouble and expense incident to an appeal, without first calling upon the court below to correct any errors which occurred at the trial.

2. The exceptions taken to the charge in this case cannot be considered. They should have pointed out some definite or specific defect in the character of the instructions given. Counsel should, by his objection, lay his finger on the precise point, or upon the precise request refused, or alleged error of the court. St. Croix Lumber Co. v. Pennington (1882) 2 Dak. 467, 11 N. W. 497.

3. There was competent evidence given both pro and con upon the question of whether the defendant had violated his contract with reference to the heat; and we cannot, in the absence of a motion for a new trial, pass upon the sufficiency of this evidence to warrant the finding that the defendant had failed to comply with the full terms of the contract in relation thereto, and must proceed, therefore, in the further examination of the case, assuming that the defendant had violated his contract.

4. Certain questions were asked, during the time of the trial, by counsel for the plaintiff, by which he sought to establish the amount of damages alleged to have been sustained during the time that he remained in the hotel; likewise questions attempting to prove the damages of the furniture as alleged in the amended paragraph of the complaint. To most all of these questions the defendant interposed the objection that the same were incompetent, irrelevant, and immaterial, not constituting a proper measure of damages, and, in many cases, that the plaintiff was not competent to answer the question asked. Defendant further claims that an error was committed in refusing to grant the motion of defendant for a verdict. These alleged errors of law occurring at the trial are properly before us in the statement of the case, and must receive consideration at our hands.

5. Did the failure of defendant to furnish the heat according to his contract constitute in law a constructive eviction of plaintiff from the premises? Assuming, as we must in this case, that defendant was

at fault in failing to furnish the heat contemplated in the contract, plaintiff was clearly within his rights, under subparagraph 1, § 5523, Rev. Codes 1905, in terminating the same. "The hirer of a thing may terminate the hiring before the end of the term agreed upon: 1. When the latter does not, within a reasonable time after a request, fulfil his obligations, if any, as to placing and securing the hirer in the quiet possession of the thing hired, or putting it into a good condition, or repairing." There was competent evidence that the plaintiff requested the defendant to furnish a proper amount of heat; that the same was not so furnished within a reasonable time. The jury having passed upon the sufficiency of such evidence, that question is settled against the defendant.

In view of the fact that the selling of heat has become an important industry under modern methods, the rights of parties growing out of contracts to furnish heat take an unusual importance. The plaintiff in this instance had no more control over the source of supply than as though the heat was to come from a central plant, blocks away, and not, as it did, from the cellar beneath the rented building. We are not dealing with a question of repairs. There is no intimation that there were neither proper pipes nor a lack of radiation. It was simply a failure on the part of defendant, who was in sole control of the heating plant, to use fuel and keep present a sufficient amount of steam to warm the rooms.

An apartment house contract was under discussion in the case of O'Gorman v. Harby, 18 Misc. 228, 41 N. Y. Supp. 521, where a landlord failed to supply a sufficient amount of heat. The court says: "The facts of the case do warrant us, however, in saying that in matters of repairing and remedying defects, as between the landlord and the lessee of rooms in an apartment house, a reasonable rule prevails. If, after notice, the landlord proceeds with proper diligence to do what is necessary, he is allowed a reasonable time to remedy the defect. If the tenant waits a reasonable time for him to do the work, and it is not done, he may remove from the premises if he has been and is deprived of the beneficial use and enjoyment of them. . . . The tenant attempted to keep warm by the use of lamps and gas logs in his apartment; but it cannot be held that he was bound to do this during a protracted discontinuance of the steam heat which his lease calls

for. In case of a prompt compliance with a notification of defect in the heating apparatus, temporary inconvenience must be suffered by the tenant, under a reasonable construction of the relations between the parties. But in this case the facts established that an unreasonable infliction was imposed upon him, and his abandonment of the premises was justified."

Again, the supreme court of New York, in Siebold v. Heyman, 120 N. Y. Supp. 105, says: "There can be no doubt that the failure of a landlord to supply sufficient heat to an apartment used as a dwelling and fitted with apparatus for that purpose, over which the landlord has control, constitutes a constructive eviction if the tenant so elects and moves out. Butler v. Newhouse, 85 N. Y. Supp. 373. It is only by removal that the tenant can make his election."

Our sister state, South Dakota, in Edmison v. Lowry, 3 S. D. at page 85, 17 L.R.A. 275, 44 Am. St. Rep. 774, 52 N. W. 585, uses the following language: "In a case like the present, the technical rule which requires the element either of absolute expulsion from the property by the landlord, or abandonment by the tenant, to be included in the act of eviction, does not and ought not to be applied. A party should be held evicted when the act of the landlord is of such a character as to deprive the tenant, or has the effect of depriving him, of the beneficial use and enjoyment of the whole or any part of the demised property to the extent he is thus deprived."

In Hoeveler v. Fleming, 91 Pa. 322, the supreme court of Pennsylvania says: "The modern doctrine as to what constitutes an eviction is that actual physical expulsion is not necessary, but any interference with the tenant's beneficial enjoyment of the demised premises will amount to an eviction in law."

An exhaustive note collating the authorities from different states may be found in the case of Wade v. Herndl, 127 Wis. 544, 5 L.R.A. (N.S.) 855, 107 N. W. 4, as printed in volume 7 Ann. Cas. 594. See 2 Underhill, Land. & T. 1909 ed. 1143, and cases cited.

Based upon our statute and these authorities, which might be multiplied, it clearly appears that the acts of defendant worked a constructive eviction of plaintiff. It would follow, therefore, that defendant broke his contract, and would not be entitled to any damages for the abandonment of the premises. The amount of damages as asked by

defendant in his motion would appear to indicate that he had withdrawn his claim for $4,800 damages by reason of plaintiff having abandoned the premises; but, because the record does not show this point clearly, we deem it important to express our views upon the rule which must obtain in a situation of this kind. Nor was there evidence sufficient upon which the court could have properly granted a motion in favor of the defendant for the $135 claimed; and our further inquiry, therefore, must be based upon that part of the motion which asks for a directed verdict because the plaintiff had wholly failed to establish any cause of action himself.

6. To determine this question, we are led to inquire: What is the measure of plaintiff's damages, and was there any sufficient evidence offered upon which a verdict for the plaintiff could be predicated? An examination of the contract between the parties shows it to be silent upon the question of the measure of damages. The parties to this action might have fixed in their contract a rule, if they had desired so to do, provided it was lawful; but they did not. They are therefore relegated to the measure of damages prescribed by statute. The leading case upon this subject in our state is Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250. This was an action growing out of a claim that the court below had adopted the wrong rule for the measurement of damages. At page 207 of 13 N. D., Judge Young, speaking for the court, discusses the entire subject of damages for the violation or breach of contract. The statutory rule (Rev. Codes 1905, § 6563) neither restricts nor enlarges the actual rule which has been recognized and applied both in England and this country, and in substance quoting from the opinion: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

Adair v. Bogle, 20 Iowa, 238, is a leading case upon this subject. Judge Dillon, at page 243, discussing the subject, says: "It is also settled that in such an action against the landlord for damages, the

22 N. D.—27.

*general rule* for the measure thereof is the difference between the rent reserved and the value of the premises for the term. If the value of the premises for the term is no greater than the rent which the tenant has agreed to pay, then the latter is not substantially injured, and can, *in general,* recover only nominal damages, though the landlord, without just cause, refuses to give possession. But if the value of the premises is greater than the rent to be paid, the lessee is entitled to the benefit of his contract, and this will ordinarily consist of the difference between the two amounts. . . . Indeed courts and juries are often perplexed in determining questions relating to the measure of damages, and, notwithstanding general rules may and should be laid down to the jury, much must still be left to their sound judgment and sense of justice and right. Two principles should, in cases like the present, be impressed upon juries: 1st. The plaintiff should recover only such damages as have directly and necessarily been occasioned by the defendant's wrongful act or default; and, 2d, that if the plaintiff, by reasonable exertions or care on his part, could have prevented such damages, he is bound to do so, and, so far as he could have thus prevented them, he cannot recover therefor. . . . The injured party is entitled to recover only such sum as will make him whole. This he is entitled to recover, so far as his injury has been the direct or natural result of the wrongful act of the other party. . . . We have said above that *in general,* or *ordinarily,* the plaintiff, in such an action as the present, recovers the difference between the value of the use of the premises and the rent reserved. But he is not in all cases confined to this, as where, in addition, he has sustained a particular loss. If other damages have resulted as the direct and necessary or natural consequence of the defendant's breach of the contract, these are recoverable, certainly where, as in this case, they are specially set forth."

We find the general rule stated in 3 Sutherland, Damages, 3d ed. 2578, as follows: "On this general proposition the authorities agree. In such cases the difference between the rent to be paid and the actual value of the premises at the time of the breach for the unexpired term is considered the natural and proximate damages."

Upon the first cause of action the jury awarded to the plaintiff the sum of $350. The defendant says, by virtue of his motion, as a matter of law, there was no competent proof in the record which would sustain

any such finding. The following, taken from the record, is believed to contain all the testimony in the case upon that question: "I have been in the hotel business in different towns for about twelve years and know what the profits are in the hotel business. Minot is a good hotel town. I have been in the hotel business in Minot since I left this building. Took possession of Morrill's Hotel, May 1, 1907. I was able to keep filled, from October 1, 1905, to May 1, 1906, under the conditions expressed as to heat, on the average, twenty-five rooms, which would leave seven empty during the winter. Have been a hotel man both before and after the making of this lease, since I have left the place. I know something about the hotel business, so far as seasons are concerned, and know Minot particularly. I think a rooming proposition, when a building is heated by steam, is better in winter than in summer, if it is properly heated. When not properly heated during the winter season the effect is that it naturally makes it harder to get people back once they leave a house, and will interfere to quite an extent with summer business. I used the building in the summer of 1906, kept the rooms full in the summer time, and I might add a little to that; perhaps would not be the condition of affairs later on, because when you drive people away you can't get them back, and the consequences are, if I stayed there long enough, I wouldn't have any roomers. I rented these rooms at $3.50 to $5 a week. I took possession of the building October 1, 1905, and remained there one year and one month, leaving the building on the 31st day of October, 1906. I left it because it was too cold. In the month of October, 1906, a number of roomers moved out on account of its being too cold. When I left I had about half the rooms in the house occupied. I tried in good faith to keep it occupied and keep people there. During the summer time the profits per month in my business, over and above my expenses, were $150. In the winter time I lost some money in the winter business, a small amount, $50 a month. In leasing this building, I was to pay $200 a month to run a year; consider this a fair rental value. I do not consider the rental value between the 1st of October to the 1st of May, with the amount of heat Mr. Olson furnished, as worth anything. I made no profits operating these rooms from the 1st of October, 1905, to the 1st of May, 1906. I lost money, $50 a month. I operated the same in the summer time at a profit of about $150 a month. The rooms were managed and

kept clean, beds changed, and everything like that the same in the winter as in the summer."

Assuming the foregoing to be all competent, it clearly appears from an anaylsis thereof that there is no sufficient evidence to warrant the jury in finding the verdict which they did. It must be remembered that the plaintiff had been in the hotel but a short time. The most definite statement, and that was a conclusion of fact, was that in the summer his net profit was $150, and in the winter he lost $50 a month. There is no evidence in any way showing the basis upon which this finding was made. The jury was not given any information upon which they could draw such a conclusion, and they were left simply to speculate and guess at a possible loss. As was stated by the court in St. John v. New York, 13 How. Pr. at page 532: "It is not denied that loss of custom is the proper ground of recovery. To prove this was the object and direct tendency of the evidence; the plaintiff showed the actual receipts of his hotel for a year or more previous to the obstruction complained of, the actual daily receipts during the continuance of the obstruction, and again the actual daily receipts for some months after the obstruction was removed. This furnished the means of computation, and of satisfactorily ascertaining the diminution of receipts. He also showed that the expenses were in the same, or about the same, ratio to the receipts during the whole period." No such proofs were offered in this case.

As counsel for the appellant properly suggests in his brief: "The most natural way to make such proofs would be by comparing the profits for corresponding periods of time through any prior or succeeding years, and under the condition of proper heating of the building. This could readily be done by showing gross earnings, actual expenses of the business during such period, if the circumstances of the case made such proof possible. There were no expenses of prior or succeeding years in this case, and therefore such proof was impossible; but that does not compel the court to accept improper evidence. Plaintiff's damages must be such as are susceptible of legal proof; otherwise he is without remedy."

It is clear from the pleadings, if not from the verdict, that the plaintiff desires damages for the remainder of the term. Assume that the plaintiff ought to be awarded such damages, how shall that be meas-

ured? Clearly, he ought to receive the full benefit of his bargain, if that benefit can be ascertained. If the bargain would have produced more than the rental value, such excess would represent the loss sustained and consequent damage. To ascertain the extent of such damages, without entering the field of speculation, is in all cases difficult, and in some entirely impossible. The innocent person must suffer in all cases where, from any cause, he is unable to furnish adequate proof of his damage. In the case at bar, plaintiff had been in occupation only a short time. No previous years of occupancy existed by which comparisons could be instituted; nor were the premises thereafter used under like conditions, which can throw light upon the situation. To raise the question of probable profits in this case would require the jury to enter a labyrinth of speculation, from which they could not hope to be extricated. It is evident, therefore, that upon the record before the court there is no evidence that for the remainder of the term the bargain would have exceeded in value the amount of rent to be paid for the term. Consequently no error was committed in failing to find damages upon that account, and we hold, as was held by the trial court, that there was not sufficient evidence, even considering it all to be competent, upon which the jury could have found a verdict for the amount claimed or for any amount.

7. Can the special damages of $593.75, allowed by the jury on account of the second cause of action, be sustained? The plaintiff claims that he is entitled to this damage resulting from the purchase of the furniture.

The court erred in submitting that question to the jury. Again referring to the rule laid down by the court in Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250, we do not believe that the testimony in support of this cause of action shows that the damages claimed may be reasonably supposed to have been in the contemplation of both parties, at the time when they made the contract, as the probable result of the breach of it. In so far as the failure to furnish the heat was a cause contributing to the loss on the furniture, it was remote, and not a proximate, consequence thereof. It was held in the case just cited that "if the contract in question . . . was in fact made under such special and exceptional circumstances that it could reasonably be concluded that the parties in making it contemplated that a loss by storm would follow its

breach, it was necessary both to allege and prove the facts in order to thus characterize the contract and establish the plaintiff's liability for such loss. This was not done."

As was stated by the court in Serfling v. Andrews, 106 Wis. 80, 81 N. W. 991: "Damages for the breach of a contract are limited to such as may be reasonably considered to have been in contemplation by the parties at the time of the making of such contract as the probable result of a breach of it. . . . Upon the facts stated in the complaint, the true rule of damages would have been the difference between the actual rental value of the premises for the term and the rent reserved in the lease. . . . If plaintiff desired to recover special damages, such as loss of prospective profits, it was his duty to allege the facts and circumstances and knowledge of the situation brought home to the defendant at the time the lease was made."

Judge Dillon, as quoted above, in Adair v. Bogle, affirms this same rule.

Under the rule, therefore, as laid down by our own, as well as other, courts, in order to have maintained any recovery of damages whatsoever growing out of the second cause of action, it would have been necessary for the plaintiff to have alleged and proved that the question of the furniture and its possible depreciation in value in case of a breaking of the lease was considered by both parties and contemplated as a factor in helping to make up the amount of damages, should any in their view occur. There is danger likewise of entering into the realm of speculation at this point; something not permitted by the statute. If it may be claimed that the statute is sufficiently broad to cover cases of this kind, what would be the result had the plaintiff put into these rooms mahogany furniture, marble-topped tables, the finest and most expensive kind of rugs, and then, being compelled to leave the premises, could find no sale for such property? Could it be urged that he could have the difference between the cost of the furniture, less the value of the reasonable wear and tear, and less the amount for which he could find sale for it? The necessities of the rule as laid down by the authorities grew out of the very nature of the case. If the parties had desired such a rule of damages to be applied, they should have so indicated in their written contract. Failure to do this leaves them to the rule laid down in the statute. That rule has been fully adjudicated by the courts.

We find, therefore, that there are neither sufficient allegations or proofs upon which any finding could be based growing out of the second cause of action. It will be unnecessary to discuss any further alleged errors.

The decision of the lower court is reversed, the judgment vacated and set aside, and a new trial is ordered.

MORGAN, Ch. J., not participating, and Goss, J., disqualified, took no part in the decision; Honorable CHAS. A. POLLOCK, Judge of the Third Judicial District, sitting in his stead by request.