## Beck et al. v. Gold et al.

*Frank Fogel*, for plaintiffs.
*Abraham Wernick*, for defendants.

ALESSANDRONI, J., May 9, 1949.—This is an action in trespass for damages sustained by plaintiff as a result of the conduct of defendants in entering plaintiffs' dwelling, wilfully and maliciously disconnecting the gas and water pipes and so demolishing said premises as to render it uninhabitable. The jury returned its verdict in favor of plaintiff and included in its award punitive damages in the sum of $500 in favor of plaintiff, Emma Beck.

In considering the motions now before this court, all the evidence and inferences reasonably deducible therefrom which are favorable to plaintiff must be taken to be true and, in addition, all unfavorable evidence and the inferences therefrom, if depending solely on oral testimony, must be rejected. All favorable evidence includes evidence on both sides and not merely that adduced by plaintiff: Berry v. Eastman et ux., 156 Pa. Superior Ct. 349; Donovan v. P. R. T. Co., 273 Pa. 152; Mountain v. American Window Glass Co., 263 Pa. 181.

Viewing the record in that light, we find that plaintiffs were living in a dwelling at 1514 Fairmount Avenue, Philadelphia, at the time of the acts complained of in November 1946. Several years prior thereto the mother of plaintiff, Emma Beck, had executed a written lease as tenant, but at a time substantially prior to November of 1946 she had moved from the premises and her daughter, son-in-law and their child became the new tenants with the knowledge and consent of the landlord, without the execution of any written lease or assignment of the prior existing one. It further appeared that sometime in March 1946 the City of Philadelphia issued a condemnation notice for the front wall of this dwelling, and the agent in July of that year apprised plaintiff, Emma Beck, of this fact and gave her an opportunity to purchase the dwelling which she declined to do. Shortly thereafter, defendants

Nathan Gold and David Cohen told plaintiffs that they were going to purchase the property and promised to permit plaintiffs to remain, under a plan whereby defendants would erect a partition to protect plaintiffs while defendants were repairing the wall. It appears that settlement was not made until either September or October 1946, and shortly thereafter defendants decided to convert this property into a store front commercial building, with apartments above. To do this they were required to excavate to an additional depth and to lower the first floor.

There is sufficient evidence to establish that defendants were determined, in spite of their promises to the contrary, to compel plaintiffs to move from the building. Although defendant, Nathan Gold, advised plaintiffs that he intended to tear down the front wall during the week of October 19th, this work was not done for more than a month thereafter, by which time defendants had succeeded in their purpose. Among other acts of defendants, it appeared that they piled lumber to block the cellar windows, thereby preventing plaintiffs from removing their garbage, although the lumber was never used in any manner in connection with remodeling of the premises. Defendants further ordered plaintiffs to remove their possessions which they had stored in the cellar and declared if they did not, defendants would burn them. The promise to erect the partition was never fulfilled, and, moreover, defendants affirmatively refused to do so. There is evidence also that when plaintiffs failed to vacate on or about November 4th defendants forcibly entered the front door, disconnected the water and gas, and further removed appurtenances necessary to the operation of the heating system and thereby rendered the premises untenable.

The record raised a question of fact as to whether defendants did not use the condemnation notice as a

pretext for doing such wilful and intentional acts as to make the property untenable and uninhabitable and thus effect an eviction of plaintiffs. In our opinion there is ample evidence to support the finding of the jury and we cannot as a matter of law set it aside.

It is true that the public may abate a dangerous condition in a building and even though the result is an expulsion of the tenant with the acquiescence of the landlord, there is no liability on his part: Hitchcock et al. v. Bacon, 118 Pa. 272. This does not give a landlord the right, however, to evict a tenant by wilful and malicious conduct and use the cloak of a condemnation notice to cover and protect him from liability for such conduct. It is inescapable under the facts in this case that defendants had no need to disconnect utilities and remove portions of the heating system necessary for its operation in order to comply with the outstanding notice to remove the dangerous condition which the city alleged existed by reason of a bulging front wall.

We are not impressed, either, by the introduction of the provisions of the lease as a justification for this conduct. The covenant of a tenant to keep the premises in good order and repair as well as the covenant authorizing the lessor and his agents to enter the premises for inspection or for making alterations, repairs and additions is distorted in its application to the facts of this case. It is well established that repairs may be so extensive as to displace the possession of the tenant and constitute an eviction: Hoeveler v. Fleming, 91 Pa. 322. The same is true of the customary release relieving the lessor of liability for any leak or break in the premises or the pipes or plumbing work, or for the acts of any persons representing the lessor. Moreover, we seriously question the effectiveness of the lease between the predecessors of the respective parties with no proof of assignment by either of them. We are

inclined to hold that the tenancy was under an oral lease from month to month.

Defendants further contend that the charge of the court on the subject of punitive damages was inadequate. This as well as other objections to the charge cannot be attacked after a verdict when no specific exception was taken at the time of trial. It has frequently been said that counsel cannot take its chance with the jury and then subject the record to a highly analytical examination for the purpose of assembling a mass of reasons in support of its motion for a new trial. See Susser v. Wiley et al., 350 Pa. 427, Grove v. Equitable L. Assur. Soc., 336 Pa. 519, Konchar et al. v. Cebular, 333 Pa. 499, and D'Allura v. Perri et al., 138 Pa. Superior Ct. 261.

Nor do we believe that there is merit to defendants' contention that they should have been allowed to introduce into the record of this case the results of a criminal proceeding arising out of the same series of incidents. We do not believe that an acquittal in a criminal case is relevant to the right of damages in a civil action. Moreover, we do not believe that the verdict is against the weight of the evidence or the charge of the court, and find no merit in the contention that appellate decisions arbitrarily limit punitive damages to a multiple of the actual damages sustained. The comment in Rider v. York Haven W. & P. Co., 251 Pa. 18, was made prior to decisions in Hughes v. Babcock et al., 349 Pa. 475, and Thompson et al. v. Swank, 317 Pa. 158. We feel that there is no hard rule or arbitrary limitation, but only a customary restriction that the amount must not be excessive or indicate bias or feeling, nor be grossly disproportionate to the real damage inflicted. Generally speaking, the rules governing excessiveness of verdicts are applicable, and we do not find that the amount awarded by the jury in this case is so extrava-

gant as a matter of law as to shock the conscience of the court.

It is our opinion that this case in all of its aspects was a matter for the jury's consideration, and we do not believe that we are warranted in interfering with the verdict as returned by it. We do not find anything in the record to justify the granting of defendants' motions.

### Order

Now, to wit, May 9, 1949, defendants' motions for judgment n. o. v. and new trial are dismissed and the prothonotary is directed to enter judgment upon the verdict.