Cesar MEVORAH and Martin Sills, individually and as co-partners doing business under the firm name and style of Irving's Tractor Lug Company, Plaintiffs and Respondents,

v.

Irving GOODMAN and Stanley Goodman, individually and as co-partners, Defendants and Appellants.

No. 7460.

Supreme Court of North Dakota.

Dec. 19, 1955.

Rehearing Denied Jan. 17, 1956.

Lanier, Lanier & Knox and Aaron Aronson, Fargo, for appellants.

J. F. X. Conmy, Bismarck, and Sgutt & Wegner, Fargo, for respondents.

BURKE, Chief Justice.

This action is for damages for alleged breaches of a contract for the sale of a business in Fargo known as Irving's Tractor Lug Company. The plaintiffs were the purchasers of the business and the defendants were the sellers. The contract of sale provided that the purchasers were to have immediate possession of the business and that the sellers were to retain title to the stock of merchandise to secure the deferred payments under the contract. Under other provisions of the contract the sellers agreed not to engage in the business of selling new tractor or farm implement parts, and not to conduct any other business in the name of Irving's Tractor Lug Company. They agreed to furnish the buyers with an accurate list of all the creditors of the business and in connection with a provision for joint control over certain banking accounts they agreed not to refuse arbitrarily or capriciously to countersign checks issued against such accounts. There were many other agreements contained in the contract but they do not appear material to this law suit.

It their complaint plaintiffs set forth five causes of action. For their first cause of action they alleged that defendants violated the clause of the contract prohibiting the use of the name Irving's Tractor Lug Company by the use of bank drafts drawn in the name of Irving"s Tractor Lug Company and by using "said trade name in various other ways" to their damage in the sum of $10,000. For their second cause of action plaintiffs alleged that defendants arbitrarily and capriciously refused to countersign checks which were presented to them for signature and that they suffered damages thereby in the sum of $10,000. For their third cause of action plaintiffs alleged that defendants violated the intent and spirit of the contract by interfering in the conduct of plaintiffs' business, by mingling new and old merchandise, by ransacking and losing plaintiffs' records, by

abusing the privilege of using office space, by removing a partition erected by plaintiffs and by conducting a scrap metal business and other business contrary to the terms of the contract. Upon this cause of action they alleged damages in the sum of $15,000.

For their fourth cause of action, plaintiffs alleged that defendants failed to furnish plaintiffs with an accurate list of creditors and that after the execution of the contract there were received by Irving's Tractor Lug Co. credit memoranda from all over the United States and Canada on transactions which had taken place prior to the purchase of the business by the plaintiffs and which credits the plaintiffs had to make good. On this cause of action plaintiffs alleged damages in the sum of $15,000. For their fifth cause of action plaintiffs alleged that, prior to the sale, defendants had issued numerous checks drawn upon bank accounts which plaintiffs acquired by the purchase, that these checks were presented for payment after the purchase of the business and were paid out of funds belonging to the plaintiffs to their damage in the sum of $5,000. A total judgment of $55,000 was demanded. The defendants denied generally all of the allegations of the complaint and asked for a dismissal of the action.

Upon the trial of the case, the jury returned a verdict for plaintiffs in the sum of $9,000 and judgment was entered accordingly. Defendants thereafter moved for a new trial. This motion was denied and defendants have appealed both from the order denying a new trial and from the judgment.

Upon this appeal defendants' contentions are:

1. That the evidence is insufficient to support a recovery by plaintiffs in any amount whatsoever.

2. That the trial court erred in allowing proof of the gross volume of business done by defendants from January 1, 1950 to July 1, 1950 and the gross volume of business done by plaintiffs from July 1, 1950 to February 1, 1951 for the purpose of establishing loss of business by the plaintiffs, there being no evidence that the two periods were comparable periods or that the business was operated under conditions which were substantially the same.

3. That the trial court erred in allowing plaintiffs to show that defendants had done some business in the name of Irving's Tractor Lug Co. when such business was not in competition with the business of plaintiffs.

4. That the trial court erred in allowing plaintiffs to show that defendants had retaken possession of the business of Irving's Tractor Lug Company on February 5, 1951, and allowing plaintiffs to show any acts of the defendants which took place after the institution of the present action.

5. That the trial court erred in not requiring the jury in its verdict to find the damages, if any, separately upon each cause of action.

■■ We shall direct our attention first to the specification as to the insufficiency of the evidence to sustain the verdict. In considering this specification we must take that view of the evidence which is most favorable to the verdict. Froh v. Hein, 76 N. D. 701, 39 N.W.2d 11, Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873. Taking this view of the evidence, we think that it is clearly sufficient to support a finding that the contract in question was breached as alleged. In fact there is no serious contention by the defendants that the evidence is not sufficient in this respect. They do argue very seriously, however, that it is insufficient to sustain the verdict in the amount found or in any amount.

From our examination of the record it appears that plaintiffs did not attempt to prove damages as alleged, that is to say; separately for each cause of action. Evidence of the separate breaches was introduced but there was practically no testimony as to the amount of damage that could be attributed to each or any separate breach. The instructions of the trial court required the jury, if they found any damages at all, to find a gross amount for the several causes of action pleaded.

Upon the first cause of action plaintiffs offered evidence to show that defendants had used the trade name "Irving's Tractor Lug Company" in violation of their agreement. This evidence was to the effect that the name appears on a sign upon the place of business used by defendants and that the defendants used drafts drawn on Irving's Tractor Lug Company in payment for scrap metal as shown by exhibits 2 to 19. These drafts were upon bank accounts maintained by the defendants in the name of Irving's Tractor Lug Company and caused plaintiffs no direct loss. Plaintiffs also offered evidence (exhibits 89 and 90) to show that between February 5, 1951 and February 14, 1951, defendants had sold in the name of Irving's Tractor Lug Company new tractor parts which had a retail value of $150 and on February 5, had made a shipment of tractor parts previously ordered from plaintiffs of the value of $440. No attempt was made to prove any damage which might be specifically attributed to these sales.

Upon their second cause of action plaintiffs offered evidence to show that defendants refused to countersign checks. There was considerable dispute in the evidence as to whether the refusal was arbitrary, but in any event plaintiffs did not show the loss of any business or other damage which could be attributed to the refusal.

Upon their third cause of action plaintiffs offered evidence of interference by the defendants in the conduct of their business. These acts of interference included mingling old and new merchandise, losing records, cluttering up the aisles and tearing down a partition erected by plaintiffs. Again no specific damage, not even the cost of erecting the partition, was shown.

Upon their fourth cause of action plaintiffs offered in evidence numerous credit memoranda, which had been issued prior to their purchase of the business and which they had to make good thereafter. The record is uncontradicted that with respect to all of these memoranda, with the possible exception of exhibits 72, 73 and 74, the defendants upon demand reimbursed the plaintiffs for the full amount thereof. Ex-

hibits 72, 73 and 74 total $88.86. Specific damages in the sum of $88.86 may thus be considered to have been shown under this cause of action.

Upon plaintiffs' fifth cause of action the evidence established that defendants had drawn checks on the account of Irving's Tractor Lug Company in the Bank of Montreal at Estevan, Sask. These checks were issued prior to the sale of the business to plaintiffs and cashed afterwards. In each instance the defendants reimbursed plaintiffs for the amount of the check, with the exception of exhibit 38 in the amount of $18.43. It appears therefore that no specific damages in excess of $18.43 were shown upon this cause of action.

It was apparently plaintiffs' procedure upon the trial to prove their case as if a single cause of action upon the several breaches of the contract had been pleaded and to attempt to show a loss of business resulting from the accumulated breaches. Upon this theory plaintiffs were allowed to put in evidence proof that the business done by Irving's Tractor Lug Company during the six months from January 1, 1950 to July 1, 1950, while it was operated by defendants grossed $100,000 and that during the succeeding seven months, under plaintiffs' management it grossed $41,000. One of the plaintiffs was also allowed to testify that the net profit in the business averaged 9½% of the gross. If this evidence was properly admitted, a question which we will consider later, and if the entire difference in the gross business could be properly considered as a loss attributable to defendants' breaches of contract then the total loss was 9½% of $59,000 or about $5,000. The verdict of $9,000 which was rendered in this case was therefore clearly excessive.

█ We turn next to the specification that the trial court erred in allowing testimony of the amount of gross business done by defendants between January 1, 1950 and July 1, 1950 in evidence for the purpose of comparing it with evidence of the gross volume of business done by defendants in their operation of the business between July 1, 1950 and February 1, 1951, in order to es-

108

tablish a loss of business attributable to breach of contract. Defendants" counsel objected to this proof upon the ground that it tended "to show two different people's operation over two different periods, not comparable, no foundation laid, which tends to give the wrong impression to the jury upon the measure of damages." We are of the opinion that the objection should have been sustained as there was no foundation for the testimony. The rule appears to be that "Evidence of sales and profits made during a corresponding period of the previous year under substantially the same conditions is competent as affording a reasonably certain basis for determining the profits lost by the interruption or destruction of a business". 15 Am.Jur. (Damages, Sec. 352) 790.

In Russell v. Olson, 22 N.D. 410, 420, 133 N.W. 1030, 1034, 37 L.R.A.,N.S., 1217, we stated that the proper way to make such proofs " * . * * would be by comparing the profits for corresponding periods · of time through any prior or succeeding years * * *."

Here the proof related to periods which were not corresponding, as one related to the first six months of the year and the other to the second six months. It is a well known fact that many businesses are subject to seasonable fluctuations. Whether this is such a business, is not shown by the record. We think, however, that it was incumbent upon the plaintiffs, if they wished a comparison of the business done during two different periods of the year to be made, to offer a foundation to demonstrate that the comparison would result in valid inferences and conclusions. Furthermore, it does not appear that Irving's Tractor Lug Company was the same business after July 1st as it was before that date. As we understand the record this business, as conducted by the defendants, included the sale of both new and used tractor, truck and farm implement parts. It was only the new parts business which was sold to plaintiffs. The defendants retained the used parts business and by agreement with plaintiffs conducted this used parts business from the same business address that was used by the plaintiffs in their business. Thus the business done after July 1st would have been substantially diminished by the fact that the plaintiffs' used parts business was in direct competition with that of the defendants carried on at the same business address. In such circumstances a comparison of the profits made during the two periods would not reflect the damages due to breach of the contract with any degree of certainty.

It was also urged that it was error for the trial court to allow one of the defendants to testify that the net profit of the business was 9½% of the gross volume of sales. As foundation for this testimony this defendant testified that he made the computation by taking the cost of the merchandise, adding to it the actual expenses incurred in operating the business and subtracting this sum from the amount of the gross sales to determine the net profit in dollars. He then determined that the profit in dollars was 9½% of the gross sales in dollars. In Russell v. Olson, 22 N.D. 410, 420, 133 N.W. 1030, 37 L.R.A.,N.S., 1217, we said that profits could readily be shown " * * * by showing gross earnings, actual expenses of the business during such period, * * *" We can see no objection to reducing the net in dollars to a percentage of the gross, where the figures upon which the percentage was computed were available and the witness could have been cross-examined upon his methods and the accuracy of his computations. The admission of this testimony was not error.

We shall consider next the specification that the court erred in allowing plaintiffs to show that defendants had done some business in the name of Irving's Tractor Lug Company when such business was not in competition with the plaintiffs. We see no merit in this specification. The use by the defendants of the name Irving's Tractor Lug Company, in any business, was a breach of their contract with the plaintiffs. Plaintiffs clearly alleged the

breach in their complaint. They had a right to prove it and what damages, if any, resulted from it.

■ Defendants have also urged that it was error for the trial court to allow in evidence, over their objection, testimony as to the wrongful seizure of the business of Irving's Tractor Lug Company by the defendants on February 5, 1951. Plaintiffs elected to treat the seizure of their stock of goods as a conversion and not as a breach of contract. They have recovered damages for that conversion. Mevorah v. Goodman, N.D., 68 N.W.2d 469. It is clear that this testimony was not material to the proof of any of the allegations of this complaint. Plaintiffs claim that this evidence was material to rebut defendants' testimony that plaintiffs had breached the purchase contract. They say it shows that defendants' acts made it impossible for them to perform the contract. This is not the case for the reason that defendants' testimony as to breaches by the plaintiffs relates to acts claimed to have taken place prior to the seizure. The admission of this evidence was therefore error.

We shall next consider the specification that the court erred in allowing in evidence testimony as to the use of the trade name, "Irving's Tractor Lug Company" by the defendants at times subsequent to the commencement of the action. This evidence related to the use of the name in the sale of new and used truck parts. In the complaint plaintiffs had alleged that defendants had used the trade name by drawing bank drafts in the name of Irving's Tractor Lug Company and "in various other ways". As we understand defendants' contention, it is, that while plaintiffs might prove damages which arose subsequently to the commencement of the action if they arose out of a breach of the contract which was prior thereto; they cannot be permitted to prove breaches which occurred subsequently without amending the complaint. In support of their theory that the evidence was competent plaintiffs cite Section 32–0303, NDRC 1943 which provides:

"Damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof or certain to result in the future."

This statute relates to the proof of damages and not to causes of action. Its commonest application is in personal injury and wrongful death cases, where damages resulting from a single injury continue to accumulate from year to year. It also applies where a person has been deprived of the possession of real property. In such cases damages for the continuing loss of rents that result from the deprivation may be proved. McLain v. Nurnberg, 16 N.D. 144, 112 N.W. 243.

The rule as stated in American Jurisprudence is:

"The right to recover damages accruing after the commencement of the suit depends upon whether they are merely incidental to the cause of action declared on or whether they arise out of a new cause of action. If they do not in themselves constitute a new cause of action, they may be recovered, provided they are immediate consequence of the act complained of * * *." 15 Am.Jur. (Damages, Sec. 16) 406.

■ In Corpus Juris Secundum the rule is stated to be:

" * * * Damages which have accrued after the action is begun may be allowed, as under statute, where they are the consequence of acts done before the beginning of the action and constituting a part of the cause of action declared on; * * *" 25 C.J.S., Damages, § 193, p. 908.

■ Here the proof received in evidence related to subsequent acts of the defendants which in themselves constituted causes of action. It was error to receive it without an amendment of the complaint.

■ The last specification of error to be considered is that the court erred in not

requiring the jury in its verdict to find damages separately for each cause of action alleged in the complaint. Upon this issue the record is confusing. Plaintiff attempted to show damages in small amounts which related specifically to two of the five causes of action. He also attempted to show a loss of business attributable to all five causes of action in the aggregate. The trial judge instructed the jury that they should assess damages for each of the five causes of action, including those upon which there was no specific proof of damages and thereafter render a general verdict. It was clearly error to submit the case in this manner since it permitted the jury to find damages upon causes of action upon which there was no proof of damage and there is no means of determining under a general verdict whether such damages were included in the jury's award. Spicer v. Northern Pac. R. Co., 21 N.D. 61, 128 N.W. 302.

In view of our conclusions on this appeal, the order of the district court denying a new trial is reversed and a new trial is granted.

MORRIS, SATHRE, JOHNSON and GRIMSON, JJ., concur.