SHEPMAN MORTGAGE & REALTY CORPORATION v. SUSSMAN.

(Supreme Court, Appellate Division, Second Department. November 10, 1911.)

1. VENDOR AND PURCHASER (§ 134*)—TITLE OF VENDOR—BREACH BY VENDEE.
   Under a contract for the sale of land, the first payment of $500 was due on execution of the contract, the second payment of $3,500 was due on September 25th, and the third payment of $8,000 was due on October 15th, at which time title was to pass and a mortgage was to be given for the balance of the purchase price. The vendee made the first payment, and $500 on the second payment, and refused to make any further payments, because there were liens outstanding against the property to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the amount of $5,700 and a mortgage of $3,500, and the vendor admitted that he had no money to pay off the liens. *Held,* that the vendor was entitled to the balance of the second payment before the vendee could claim a breach of the contract by failure to give a good title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 134.*]

2. VENDOR AND PURCHASER (§ 349*)—BREACH BY VENDOR—SPECIAL DAMAGES— PLEADING.

In an action by a vendee for breach by the vendor of a contract to convey land, commissions, paid or incurred on a resale of the property by the vendee may not be recovered, where no such special damage was alleged in the complaint.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 349.*]

Appeal from Trial Term, Kings County.

Action by the Shepman Mortgage & Realty Corporation against Matilda Sussman. From a judgment in favor of plaintiff, and from an order denying defendant's motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Walter L. Durack (Joseph J. Schwartz, on the brief), for appellant. Leonard J. Obermeier, for respondent.

THOMAS, J. Elizabeth Shepman, plaintiff's assignor and president, as vendee, made a contract with defendant for the purchase of 132 lots at the rate of $350 per lot, and reference was had to a filed map. The payments were due, $500 on execution of the contract, $3,500 on or before September 25, 1906, and $8,000 on or before October 15, 1906, at which time the title should pass, and a mortgage for the balance of the purchase money was promised. The first payment was made, but only $500 of the second payment due September 25th was made, either through pecuniary inconvenience or the vendee's apprehension of the vendor's inability to fulfill, and further performance by vendee was continued to October 29th, and passing of title was set for November 15th. There was no further payment made or tendered by the vendee or the assignee. After the vendee's failure to pay the $3,000 balance postponed to October 29th, the defendant threatened a forfeiture, and this resulted in a letter, dated November 12th, from plaintiff's lawyers, intimating an action against the vendor and suggesting a conference for adjustment. There was no meeting on November 15th, but on November 19th the parties did meet, and an unavailing discussion resulted in an adjournment to November 21st, when no money or deed was tendered, and there was a final parting in disagreement.

Search showed that years earlier defendant's husband, Sussman, had for some purpose conveyed two lots to Rosen, taking a purchase-money mortgage for $400, and that he retained custody of the deed. Hence conveyance of these lots could not be had pending foreclosure of the mortgage, and unless time were afforded for that purpose the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vendor could not fulfill, and her agent, Mr. Sussman, admitted the inability. But, on the trial, evidence was given in behalf of the defendant that the purchaser was apprised before the contract was executed of the difficulty, and consented that a conveyance of the two lots could be made opportunely. The learned trial justice withdrew from the jury the whole issue as to these two lots by an instruction that a tender of a deed for 130 lots would have been substantial performance; "but," he added, "it would have to be clear of taxes and assessments and mortgages." So it appears that the judgment has gone against the defendant because she did not clear her land of liens for taxes, in amount some $5,700, and a mortgage on which there was an unpaid balance of $3,500.

[1] The plaintiff's contention was and is that nothing need be tendered the defendant until the latter had cleared all the liens, and that, as she admitted that she could not convey the two lots and did not have the money to discharge the liens, the vendee was justified in regarding itself as ready and willing to perform, but excused from tender or payment by reason of the defendant's unreadiness. That attitude was unjust and injurious to the vendor. She was obligated to be ready with unincumbered land on the day, and for this she needed money. Anticipating it, the parties had agreed that as early as September 25th the vendor should be paid $3,500, but by plaintiff's default only $500 was paid. Then by the defendant's consent the payment of the remaining $3,000 was set for October 29th, which came and went with plaintiff persisting in default, and at the meetings of November 19th and 21st the plaintiff ignored its continuing disregard of its obligation and the consequent measurable disablement of the defendant to clear the liens, and demanded that all liens be lifted, although it had helped to retain them by crippling the vendor's available resources. The defendant was entitled to the $3,000 before closing the title and before any performance on his part, and on the closing day the payment of the further sum of $8,000 should concur with his performance. With these sums the liens could have been removed, and without the $8,000 the defendant could have applied the $3,000 for that purpose. It is no answer that in itself the $3,000 was insufficient. It was a substantial contribution, and plaintiff could not examine defendant's assets and credits and conclude that payment of the $3,000 would not effect the removal of the liens. The promise to pay had been made. It had not been waived, and the plaintiff, before accusing another of default, should have mended its own.

It is observed that the plaintiff would hold the defendant to strict performance, but nothing could be more evident than its own lack of readiness. The vendee was Elizabeth Shepman; the successor to her rights was the Shepman Company. Its president on the trial traced the resources for payment to her aunt's bank book, to which she by some right claimed access; to people who had promised to invest in the company; to some money the company had, she knew not what; to some money she or its lawyer would invest in the company, etc. The testimony of the lawyers does not attribute much

financial stability to the plaintiff. The palpable fact is that the plaintiff was not at all ready. What it and its president, in association with her relative and proposed investors, could have done, may be something more than conjecture; but these resources were unmarshaled, and could not have been seasonably organized to save a default. The plaintiff's ready answer is that the defendant was unable to convey the lots, and so admitted. With that this court is not concerned. The trial court eliminated that question without exception on the part of the plaintiff.

[2] This left the sole question of default of one or both of the parties—one in paying or readiness to pay, and the other in clearing the liens. The jury found a verdict of $7,500, which included loss of profits to plaintiff upon resale of some nineteen of the lots. The trial justice correctly conceived that such recovery was in error, and granted a new trial unless the verdict was reduced to $2,500, but permitted that sum to include commissions paid or incurred on such resale. There was no such special damage alleged in the complaint, the language of which excludes such demand.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.