[Civ. No. 18307. First Dist., Div. One. Aug. 27, 1959.]

DALICE B. CHRISTENSEN, Respondent, v. JOHN D. SLAWTER, JR., et al., Appellants.

Faber L. Johnston and Faber L. Johnston, Jr., for Appellants.

Eustice & Feeley for Respondent.

WAGLER, J. pro tem.*—The principal question presented by this appeal is whether in an action for damages for delay in conveying real property the measure of damages is controlled by Civil Code, section 3306.

Plaintiff-respondent is a licensed building contractor engaged in the business of building homes for speculation. By a ''Deposit Receipt'' agreement dated May 24, 1954, appellants agreed to sell and respondent to buy 30 lots in a subdivision being developed by appellants in Santa Clara County. Respondent was to receive possession[1] of the lots on June 7, 1954, and he agreed to start construction of homes on 10 of the lots prior to August 1, on an additional 10 prior to September 1, and on the remaining 10 before October 1. The agreement further provided that prior to the start of construction, or from the proceeds of a construction loan, respondent would pay approximately one-third of the purchase price due on each lot and the balance from the proceeds of the sale of homes to the ultimate purchaser. The foregoing provisions were interpreted by the parties and by the trial court as requiring appellants to convey 10 lots prior to August 1, 10 prior to September 1, and the remaining 10 prior to October 1.

---

*Assigned by Chairman of Judicial Council.

[1]Whether or not respondent acquired possession on this date does not appear. However, due to the type of business in which respondent was engaged (that of building homes financed by construction loans), it appears that possession without title was of no value to respondent, because construction could not start until title was in the builder.

The agreement also expressly provided that time was of the essence; that the lots would "be handled in a separate escrow by San Jose Abstract" appropriate instructions to be given; and "that the property was sold subject to approval of owner."

In his complaint plaintiff alleged that defendants breached their agreement to convey on the date specified, in that 13 of the lots were not conveyed until January 13, 1955. Plaintiff also alleged in his complaint that for a long time prior to the execution of the agreement in question he was engaged in the business of constructing homes for speculation; that this fact was known to the defendants and that said agreement was executed with this knowledge in the minds of all the parties. "That in consequence of the delay by defendants in delivering said lots and in failing to perform said contract as agreed the plaintiff suffered damages in the amount of $5,000 as a consequence of the interference with his construction schedule, a time loss of (4) months, loss of crews due to work stoppage, loss of the advertising campaign value, additional construction costs because the delay required building in the rainy season and the labor and material prices increased."

Appellants entered proper and timely objections to all of the evidence dealing with damages, all of which were overruled.

The trial court found all of the foregoing allegations to be true, except the amount of the damages sustained. This sum was fixed at $2,114.24, and consisted of the following items: rain damage, $473.24; additional interest resulting from delay, $150; extra salary (superintendent), $750; additional cost of painting, $221; additional cost of plumbing, $364; additional cost of excavation, $156. These findings are supported by the settled statement which also recites that the 13 houses in question were ultimately sold at a profit but there was "[n]o evidence as to what that profit was." The complaint contained no allegation of bad faith on the part of the defendants and the case was apparently tried on the theory that bad faith was not an issue. However, the agreed statement recites that "[i]t was stipulated during the trial that there was no 'bad faith' (in the ordinary sense of that term) —in the Defendants. They did not delay for the purpose of injuring plaintiff or for any gain to themselves.

"The delay resulted from defendants' failure to make certain payments to the Title Company which held legal title. Defendants did demand that the Title Company convey to

plaintiff—but Title Company refused until defendants made certain payments which they were bound to make.''

The general rule for assessing damages for breach of contract is stated in Civil Code, section 3300, as follows: ''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'' This is the measure of damages applied by the trial court. It was the proper measure unless there is to be found in the Civil Code another section which *expressly* provides for the measure of damages to be applied to a breach of contract occasioned by a *delay* in conveying real property. Appellants urge that such express provision is to be found in Civil Code, section 3306, which reads as follows: ''The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.'' Appellants urge that Civil Code, section 3306, is applicable to *any* breach and does not require a total breach or failure to convey. Respondent, of course, disagrees.

Assuming that reasonable minds might differ as to the precise meaning of the word ''breach'' we must nevertheless look to the entire statute in order to determine the scope and purpose of the provision of which the word is a part. (*Wallace* v. *Payne*, 197 Cal. 539 [241 P. 879]; *Bohn* v. *Better Biscuits, Inc.*, 26 Cal.App.2d 61 [78 P.2d 1177].)

When this is done the legislative purpose appears to us to be quite clear. A simple reading of the statute discloses that by its explicit terms it is adaptable only to a failure to convey, and not to a delay in conveying. Certainly no one would seriously argue that after a tardy conveyance a purchaser would be entitled to retain title and also recoup his purchase price.

Sections 3306, 3306a and 3307 of the Civil Code, when considered together, appear to represent a legislative scheme to establish rules governing *failure* to convey, not *delay* in conveying.

■ Both parties in their briefs appear to have overlooked a rather fundamental rule involving contracts to convey real property. It is this: "In the absence of mistake, fraud, or other matter affecting the validity of the instrument, and except where collateral matters are involved, a deed executed in consummation of an agreement between the parties merges all prior negotiations and agreements relating thereto; and, with the exceptions noted, the deed becomes the measure of the rights of the parties." (15 Cal.Jur.2d, § 123, p. 523.)

■ "The acceptance of a deed of conveyance of land from one who has previously contracted to sell it, discharges the contractual duties of the seller to the party so accepting except such as are embodied in the deed or . . . as might naturally be made as collateral to the deed and not included in it. . . ." (2 Rest., Contracts, § 413, p. 778; see also: 3 American Law of Property, § 11.65, p. 165; 8 Thompson, Real Property, § 4551, p. 463; *Peabody* v. *Phelps*, 9 Cal. 213; *Bryan* v. *Swain*, 56 Cal. 616; *Fraser* v. *Bentel*, 161 Cal. 390 [119 P. 509, Ann.Cas. 1913B 1062]; *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120]; *Goldstein* v. *Hensley*, 4 Cal.App. 444 [88 P. 507]; 84 A.L.R. 1008-1041.)

■ Since the acceptance of a deed of conveyance of land from one who has previously contracted to sell it discharges the contractual obligation to convey, it follows that mere tardiness in the delivery of a deed (if the deed is ultimately accepted by the vendee) cannot constitute a breach of the covenant to convey. ■ As said in *Continental Life Ins. Co.* v. *Smith*, 41 N.M. 82 [64 P.2d 377]: "Strictly speaking, a covenant to convey does not merge, but terminates as a completed transaction upon delivery and acceptance of a deed. *It is never breached if a deed is accepted at any time.* ■ But a stipulation to deliver a deed at a certain time . . . is either breached before the delivery of a deed or falls with such delivery and acceptance. It was never intended to survive the deed *except as a basis for an action for damages,* and this appears from its terms." (Emphasis added; pp. 381-382.)

■ Since in the case at bar the deed was accepted when tendered, and before suit was filed, there was no breach of the covenant to convey, Civil Code, section 3306, was not applicable, and the question of "bad faith" was immaterial.

There remains, however, the crucial question of whether or not the acceptance of the deed by the plaintiff also terminated

his right to sue for damages resulting from the delay in conveying title. ▮ "While the decisions are not numerous, most courts discussing the question appear to have taken the view that an express stipulation as to time of conveyance or possession is not merged in a deed accepted by the vendee and containing no provisions in this respect, particularly where it is shown that time was a primary factor inducing the agreement." (38 A.L.R.2d, § 13, p. 1333; see also *Continental Life Ins. Co.* v. *Smith* (N.M.), *supra*, 64 P.2d 377.)

▮ The rule is stated in 92 Corpus Juris Secundum, page 619, as follows: "Execution and acceptance of a deed at a time subsequent to that fixed for that purpose by the sale contract entitle the purchaser to sue for the damages from delay arising from the breach of the provision as to the time of conveyance; in such a case, the acceptance of the deed when it is tendered does not preclude the action."

▮ In the case at bar, an express stipulation makes time of the essence of this contract, it also appears that the time of conveyance was one of the primary considerations inducing the contract; under such circumstances the acceptance of a tardy conveyance should not be held to constitute a waiver of the purchaser's right to sue for the damages resulting from the delay. Furthermore, the defense of waiver was not pleaded and the record is barren of any evidence thereon. (See *Wood* v. *Jotham Bixby Co.*, 29 Cal.App.2d 294 [84 P.2d 204]; *Pohle* v. *Christian*, 21 Cal.2d 83 [130 P.2d 417].)

While no case in this state directly in point—i.e., one involving an action for damages alone for delay in conveying—has come to our attention, numerous decisions dealing with specific performance[2] confirm the views herein expressed. (See

---

[2]The rule is well established in this jurisdiction that where specific performance through no fault of the purchaser cannot be decreed and there is a *failure* to convey, Civil Code, § 3306, is applicable. (See *Messer* v. *Hibernia Sav. etc. Society*, 149 Cal. 122 [84 P. 835]; *Morrison* v. *Land*, 169 Cal. 580 [147 P. 259]; *Engasser* v. *Jones*, 88 Cal.App.2d 171 [198 P.2d 546]; *Wolfson* v. *Hadden*, 110 Cal.App. 573 [294 P. 772].) The same rule obtains when there is a *failure* to convey a part of the property, *McCowen* v. *Pew*, 147 Cal. 299 [81 P. 958], and when damages alone (without specific performance) are sought. (*Romero* v. *Rainey*, 138 Cal.App.2d 139 [291 P.2d 38]; *Nelson* v. *Fernando Nelson & Sons*, 5 Cal.2d 511 [55 P.2d 859]; *Fox* v. *Aced*, 49 Cal.2d 381 [317 P.2d 608].) Since we have decided that the instant case is not controlled by Civil Code, section 3306, the question whether or not that section prohibits the recovery of special damages not therein mentioned (when within the contemplation of the parties) is one which we are not called upon to decide and which we do not decide. (But see Oleck, Damages to Persons and Property (rev. ed. 1957), § 255, pp. 506-507.)

*Abbott* v. *76 Land & Water Co.*, 161 Cal. 42 [118 P. 425] ; *Chase* v. *Blair*, 105 Cal.App. 744 [288 P. 681] ; *Smith* v. *Schrader*, 80 Cal.App. 478 [251 P. 967] ; *Coleman* v. *Dawson*, 110 Cal.App. 201 [294 P. 13] ; *Fisher* v. *Losey*, 78 Cal.App.2d 121 [177 P.2d 334] ; *Jonas* v. *Leland*, 77 Cal.App.2d 770 [176 P.2d 764].) The foregoing cases establish the rule of the measure of damages in cases when specific performance is decreed. There is no valid reason why the same measure of damages should not be applied when the purchaser obtains a tardy conveyance without the necessity of seeking specific performance. The foregoing cases should be accepted as authoritative in the instant case for two reasons. First: an action of this kind as well as an action for specific performance lies not in law but in equity, because the right to damages depends upon the right to specific performance and is not available until the latter is established. (*Morgan* v. *Dibble*, 43 Cal.App. 116 [184 P. 704] ; *Hupp* v. *Lawler*, 106 Cal.App. 121 [288 P. 801] ; *Eagle Oil & Refining Co.* v. *James*, 52 Cal. App.2d 669 [126 P.2d 880] ; *Baran* v. *Goldberg*, 86 Cal.App. 2d 506 [194 P.2d 765].) Second: equity always follows the law when awarding damages. (*Messer* v. *Hibernia Sav. etc. Society, supra*, 149 Cal. 122.)

In *Abbott* v. *76 Land & Water Co., supra*, the court said by way of dictum: " [A]n action for specific performance necessarily involves not only the question of such performance, but also all claims for compensation and damage on account of the delay in performance." (P. 49.) The Abbott case is cited with approval in *Jonas* v. *Leland, supra*, where the court said at page 778: " 'Even where specific performance is granted, the court may award in addition such damages as the plaintiff is lawfully entitled to by reason of delay in performance.' "

In *Smith* v. *Schrader, supra*, 80 Cal.App. 478, an action in which specific performance was decreed, the court said after rejecting the contention that Civil Code, section 3306, was applicable: " 'A vendor retaining, or wrongfully regaining, possession, after the time appointed for delivery of possession, is chargeable with the rents and profits, or with the fair rental value of the premises.' " (P. 489.) This conforms very closely to the provisions found in Civil Code, section 3334, which fixes the measure of damages for the wrongful occupation of real property. In Smith the court said further: " '. . . The general rule is to adjust the rights of the parties so as to give each as nearly as possible what he would have

received if the contract had been performed according to its terms. . . .' (P. 489) . . . '*In addition to general damages the purchaser may be entitled to recover special damages where they are the natural and proximate [result] . . . of the vendor's breach of the contract. . . .'* '' (Emphasis added; p. 491.) This statement corresponds closely with the provisions of Civil Code, section 3300, the measure of damages applied by the trial court.

Special damages, of course, to be recoverable, as in any case, must be pleaded and must fall within the rule of *Hadley* v. *Baxendale*, 156 Eng. Rep. 145; i.e., they must reasonably be supposed to have been within the contemplation of the parties when making the contract as the probable result of a breach. (14 Cal.Jur.2d 660; 15 Am.Jur. 556, 557, 558.)

The intention of the parties in this respect is to be ascertained from the language of the contract itself, and its terms must be construed in the light of the facts which were known, or should have been known, at the time of making the agreement. (*Hunt Bros. Co.* v. *San Lorenzo etc. Co.*, 150 Cal. 51 [87 P. 1093, 7 L.R.A. N.S. 913]; *California P. Mfg. Co.* v. *Stafford P. Co.*, 192 Cal. 479 [221 P. 345, 32 A.L.R. 114].)

When the facts show that a special purpose is intended to be accomplished by one of the parties (a failure to accomplish which by means of the contract would cause him greater damage than would ordinarily flow from a breach by the other party), and this special circumstance is brought to the attention of the other party, damages normally flowing from a breach of the contract in view of such special circumstances are said to be within the contemplation of the parties. (*Mitchell* v. *Clarke*, 71 Cal. 163 [11 P. 882, 60 Am.Rep. 529]; *Wallace* v. *Ah Sam*, 71 Cal. 197 [12 P. 46, 60 Am.Rep. 534]; *Fraser* v. *Bentel*, 161 Cal. 390 [119 P. 509, Ann.Cas. 1913B 1062].) Damages not meeting the test laid down in *Hadley* v. *Baxendale* are said to be remote[3] and not recover-

---

[3] (*Smith* v. *Schrader, supra,* 80 Cal.App. 478, [rent paid for other premises held remote]; *Houston & T.C.R. Co.* v. *Wright,* 15 Tex.Civ. App. 151 [38 S.W. 836], [loss of profit on a resale denied because contract of resale was made after contract on which action was brought]; *In re Hagers Estate,* 212 Iowa 851 [235 N.W. 563] [damages due to loss of use of salvage of buildings held not within the contemplation of the parties]; *Shepman Mortgage & Realty Corp.* v. *Sussman,* 147 App.Div. 25 [131 N.Y.S. 645] [commission paid vendee on resale held not recoverable because not pleaded]; compare *Royer* v. *Carter,* 37 Cal.2d 544 [233 P.2d 539]; *Jacob* v. *Miner,* 67 Ariz. 109 [191 P.2d 734] [loss of wages resulting from having to remain on property held recoverable]; see 17 A.L.R.2d 1354, 1360.)

able. (*Mitchell* v. *Clarke*, 71 Cal. 163 [11 P. 882, 60 Am. Rep. 529].)

In the instant case the contract on its face clearly shows that the vendee was purchasing the lots for a special purpose, i.e., the building of homes for resale. The contract also shows that a definite time schedule for construction was contemplated, and time was specifically declared to be of the essence. The accomplishment of the vendee's objective depended upon the obtaining of a construction loan. To obtain such a loan it was of course necessary for the builder to obtain title and in order to maintain his construction schedule it was important that the time schedule for conveying title should also be maintained. Under these circumstances the vendor knew, or should have known, that an interruption of the time schedule probably would result in special damage to the vendee. Furthermore, the record shows that on November 23, 1954, the attorney for the plaintiff wrote the defendants in part as follows: ''There are thirteen lots which have not, as yet, been made available to Mr. Christensen though demand has been made for them.

''Mr. Christensen, as a contractor, has work for his crews for about two more days on the tract. If these lots are not made available to him, his crews will be idle and he will suffer substantial losses.'' This letter could not, of course, impose a liability for damages not originally within the contemplation of the parties. It did, however, make clear respondent's election to treat the contract as subsisting and his position that such special damages were within the contemplation of the parties.

We conclude that the finding of the trial court to the effect that the damages for which compensation was allowed was a proximate result of defendants' delay in conveying, as well as the implied finding and conclusion that such damages were within the contemplation of the parties and compensable, is amply supported by the record before us and the applicable law.

Appellants rely heavily upon two decisions: *Coger* v. *Wiltsey*, 117 Cal.App. 652 [4 P.2d 302], and *Brand* v. *Drinkhouse & Green*, 2 Cal.App.2d 193 [37 P.2d 479]. In Coger the defendant, Mary Wiltsey, on June 25, 1928, entered into an agreement to lease certain real property in Tehama County to plaintiff, for a period of five years. The lease gave plaintiff an option to purchase for the sum of $7,000 and required de-

fendant to "forthwith" execute a deed and deposit it in escrow with a named bank in Red Bluff. The deed mentioned in the agreement was not deposited in escrow until March 20, 1930. On March 11, 1930, plaintiff signed an agreement to sell the property to one Coates (a total stranger who had just arrived in Red Bluff), for the sum of $17,500. When plaintiff and Coates requested the deed from the bank they were informed that it had not been deposited. Plaintiff had difficulty in locating defendant who had left Red Bluff, and by the time the deed was deposited Coates had departed for San Francisco and plaintiff lost the sale. Plaintiff then sued for damages, alleging the *"failure, refusal* and *neglect"* of defendant to deposit the deed as required by the agreement. (Emphasis added.)

In reversing a judgment which awarded plaintiff damages totalling $9,000, on the theory that Civil Code, section 3300, was controlling, the court held that the case had been tried upon a total misapprehension of the measure of damages applicable. The applicable section, said the court, was Civil Code, section 3306, and since no evidence of bad faith was presented, a motion for a nonsuit should have been granted. The record is not entirely clear, but apparently the deed which was tardily deposited had not been accepted by the plaintiff up to the time of trial. The doctrine of merger therefore had no application and the case must be accepted as factually representing a *failure* to convey rather than a *delay* in conveying.

In any event the conclusion that the plaintiff was not entitled to recover was entirely proper on the facts. As the court aptly pointed out, there was "no evidence in the record that [defendant] had any knowledge of the intent of respondent to ever make a resale of the property." Loss of profits on a resale under all of the authorities would under such circumstances be too remote and not recoverable. We regard the Coger case as consistent with the views herein expressed.

In Brand, plaintiff entered into an installment contract for the purchase of land in the town of Livermore. He went into immediate possession, and when all installments and interest had been paid demanded a deed which was refused. He then sued for specific performance and without alleging any damages prayed for $500. Before defendant Drinkhouse was served with summons he executed a deed and caused it to be

recorded. This fact he alleged in his answer. The defendant Green filed an answer in which he denied many of the material allegations of the complaint but during the trial he tendered a deed duly executed. An examination of the findings of the trial court will disclose, however, that neither deed was drawn in accordance with the contract of purchase and a decree of specific performance was entered directing each defendant to execute a good and sufficient deed to the plaintiff. Over objections plaintiff was permitted to testify that he had received certain offers to purchase the property, and one Ketchum testified that he had offered to exchange his garage for the property. At the conclusion of the trial plaintiff was permitted to amend his complaint to allege that he "had offers from several persons to purchase said property, and that by reason of defendants' *failure* to execute a conveyance" he lost these sales to his damage in the sum of $500. (Emphasis added.)

In reversing that part of the judgment which awarded plaintiff damages in the sum of $300, the court pointed out that the evidence did not support any finding of damages, there being no testimony as to the value of the garage property or that any prospective purchaser "was ready, able or willing to purchase."

With the conclusion that the finding of damage was not supported by the evidence, we agree. However, as an additional ground for striking out that part of the decree which awarded plaintiff damages, the court said: "Freely conceding that under some circumstances damages may be awarded in an action for specific performance, the manner of estimating such damages is limited by the terms of the statute. (Civ. Code, § 3306.)" To the extent that the foregoing statement can be construed as a declaration that Civil Code, section 3306, is applicable to an action for specific performance when specific performance is in fact decreed, it is disapproved.

 Appellants raise one additional point. The finding of the trial court "[t]hat the owners [Mr. and Mrs. Aguiar] approved the sale of the property as provided in said agreement," they assert, is not supported by the record. It is true that the record contains no direct statement regarding the Aguiars' approval. It clearly appears, however, that 17 of the lots were conveyed on time. How this was accomplished without the approval of the owners, appellants do not explain.

338

All of the lots were included in one holding agreement pursuant to which Mr. and Mrs. Aguiar were to convey a total of 85.88 acres. Furthermore, the record states that the "delay resulted from defendants' failure to make certain payments to the Title Company which held legal title," and that "[w]hen defendants made those payments, the Title Company did convey." This certainly negatives any idea that the owners had not approved the sale. A finding of fact to be supported need not have direct positive evidence behind it. It may obtain its support from reasonable and legitimate inference to be drawn from the testimony adduced. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) Under well established rules of judicial review we hold that the finding in question finds adequate support in the settled statement.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.