[Civ. No. 20055.   First Dist., Div. Three.   Dec. 21, 1962.]

ORTON SABRAW et al., Plaintiffs and Appellants, v. BERNARD KAPLAN et al., Defendants and Respondents.

Rhodes, Sabraw & Avera and Fred E. Avera for Plaintiffs and Appellants.

Buresh, Smith, Truett & Durham and Harold J. Truett for Defendants and Respondents.

DEVINE, J.—Plaintiff Sabraw, a contractor, agreed to construct a building for defendant, which was to be used as a retail drugstore, and there is evidence that plaintiff knew of the intended use. The building was to have been completed, according to the agreement, by April 14, 1958, but it was not finished until August 21, 1958, and although the subject of fault was contested in the trial court, it is conceded by plaintiff and cross-defendant, Sabraw, that the trial court's finding that deprivation of the use of the property for a period of four and a quarter months was the fault of plaintiff, cannot be disturbed. (Parties on both sides are described in the singular, although nominally the parties are plural on both sides.)

Plaintiff sued to foreclose a mechanic's lien, and obtained judgment, which also is beyond dispute. Defendant cross-complained for loss of profits of the business during the period of delay and for a salary or drawing account which, he alleged, he had to pay a pharmacist during the idle period. Both parties filed briefs relating to the allowability of damages for loss of profits of a business which was established after delayed construction; appellant, the contractor, having been found at fault for the delay, argued that the proper measure of damages would have been the rental value of the building.

It appears from the statement of the referee, who was appointed by the court to examine into the profits and losses of the business, that the rent actually paid by the partnership which operated the drugstore to respondent Kaplan was $7,650 for a 16-months' period, or approximately $480 per month. This monthly rental, extended for a period of four and a quarter months, would be several hundred dollars more than the $1,679.04 which was allowed by the court for "loss of profits and damage," and, therefore, appellant has not been prejudiced by this part of the award.

The cross-complaint alleges that because of the delay in completing the building, defendant was obligated, for a period of two months, to pay the wages of a pharmacist, although the building could not be used as a drugstore, and that as a result he was damaged in the sum of $1,400. The court awarded $1,330 for payment of the pharmacist for work not done from July 1, 1958, to August 28, 1958, the date of the opening of the drugstore.

There is a dispute as to whether any evidence on the subject of the "salary" or "draw" paid to the pharmacist was admitted in evidence at all, because when cross-complainant, in his case in chief, offered proof thereof, the judge sustained objection on the ground that such damages were remote. At the end of the trial, a referee was appointed to work out the matter of profits. He charged the salary to the month of August 1958 in the course of a lengthy report on a full year's operations, and both counsel gave a general acceptance to the referee's findings. We think the fair thing to do in the somewhat cloudy state of the record at this point is for us to infer a ruling revoking the court's original denial of the evidence; and, on the other hand, to deem the acceptance by counsel of the referee's findings to be merely an agreement to the correctness of computations and not to the legal effect of any of them.

The evidence is this : Kaplan, who operates at least one other pharmacy, discussed with Frank Hermansky the entering of a partnership. Discussions were commenced in December 1957 or January 1958, but the partnership was not reduced to a formal written agreement until July 9, 1958. The partnership agreement was not produced at the trial. The amount of $700 a month was charged against the partnership as salary for Hermansky during the period covered by the referee's report, August 29, 1958, to December 31, 1959, but salary at the rate of $700 a month for the months of July and August

was charged entirely to August, 1958. ▮▮▮ Except for the item of evidence that the contractor knew that the building was being constructed for a drugstore, there is no evidence on the subject of this item of "salary" or "drawing account," as Kaplan sometimes referred to it.

The question before us, then, is whether the amount paid to Hermansky for the period of almost two months when he had not commenced to work is chargeable to Sabraw for his failure to finish the building at the agreed time. We observe that if any damages were allowable, there would be only those, if any, suffered by Kaplan, because Hermansky was not a party to the contract with Sabraw and Sabraw had no responsibility to him. The record in this regard is not clear because, as stated above, the terms of the partnership were not made known, possibly because the court originally sustained objection to evidence on this whole subject. Even if we were to assume, however, that Kaplan paid the $1,330 out of his own funds to his partner, Hermansky, for work which Hermansky did not do, we find the evidence insufficient to sustain the award.

The measure of damages for the breach of an obligation arising from contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. (Civ. Code, § 3300.) ▮▮▮ Special damages must fall within the rule of *Hadley* v. *Baxendale,* 156 Eng. Rep. 145, that is, they must reasonably be supposed to have been contemplated or foreseeable by the parties when making the contract as the probable result of a breach. ▮▮▮ If special circumstances cause an unusual injury, special damages cannot be recovered unless the circumstances were known or should have been known to the party at fault at the time the contract was made. (*Christensen* v. *Slawter,* 173 Cal.App.2d 325, 334 [343 P.2d 341, 74 A.L.R.2d 567]; 1 Witkin, Summary of Cal. Law, § 277, p. 306; Rest., Contracts, § 330.)

▮▮▮ We believe that, under the evidence presented, it could not have been within the reasonable contemplation of the parties, Sabraw and Kaplan, or reasonably foreseeable by them, that Kaplan would enter a partnership agreement with a third person and would advance a drawing account against profits, so that delay in the construction would obligate Sabraw to pay this amount. As stated above, the record is completely barren of evidence showing any necessity for

acquiring the services of a pharmacist prior to the completion of the building, much less for the admitting of another person to partnership with the sole party to whom the contractor was responsible. If evidence were presented that it was reasonably foreseeable that at the time of entering the construction contract in January 1958 a pharmacist, in addition to Kaplan, would be necessary for the operation, and that it would be difficult to engage such a pharmacist except by employing him even while he had to remain idle, and that these factors would cause loss to Kaplan (not merely to a newly acquired partner) if he did not engage a pharmacist, possibly an award could be sustained, even though the other pharmacist, besides being salaried, was a partner. The record is devoid of evidence to that effect. If Kaplan simply desired this particular partnership with Hermansky, who, the evidence shows, contributed to the capital, we do not believe this would be reasonably foreseeable by Sabraw. Not only is there a failure of evidence in the respects mentioned, but there is an element of positive evidence against the proposition that the parties did contemplate this item of damages in this, that when the delay had occurred, counsel for Kaplan wrote to Sabraw to demand early completion and did not call Sabraw's attention to the partnership or to any engagement of the pharmacist. We appreciate that it is not necessary that the exact manner by which damages occur by reason of breach of contract be foreseeable. (*California Press Mfg. Co.* v. *Stafford Packing Co.,* 192 Cal. 479, 483, 484 [221 P. 345, 32 A.L.R. 114].) We regard what happened, however, as having been a special circumstance which, in the present state of the record, does not support the award.

Judgment for plaintiff in the sum of $5,722.26, with interest thereon at the rate of 7 per cent per annum from September 25, 1958, until paid, is affirmed; judgment for cross-complainant in the amount of $1,679.04, together with interest on said sum at the rate of 7 per cent per annum from and after August 21, 1958, until paid, is affirmed; judgment in the amount of $1,330, with similar interest, is reversed. Appellant shall recover costs on appeal.

Draper, P. J., and Salsman, J., concurred.