203 N.W.2d 434 (1972)
Henry R. BUMANN and Alice Jean Bumann, Plaintiffs and Respondents,
v.
Eimer MAURER and Dorothy Maurer, Defendants and Appellants.
Civ. No. 8830.
Supreme Court of North Dakota.
December 19, 1972.
*437 James D. Schlosser, Bismarck, for plaintiffs and respondents.
Rausch & Chapman, Bismarck, for defendants and appellants.
RALPH B. MAXWELL, District Judge.
This is our second look at this case. It was previously here on certified questions of law. This Court declined to rule on the questions then submitted for the reason "the certified answers would not be dispositive of the case." Bumann v. Maurer, 188 N.W.2d 740, 743 (1971). It was remanded for trial.
The facts were ably presented in Justice Paulson's opinion on that appeal, and need no reiteration at length here. In essence the suit was instituted by the plaintiffs (respondents) for two purposes. One was to require the defendants (appellants) to specifically perform an agreement to convey real estate. The other was to recover damages imputable to tardiness in transferring possession of the land.
After issue was joined, and when trial was first imminent, the defendants relented and did convey the property to the plaintiffs. That left open only the issue of damages alleged to have sprouted from laggardly performance.
Trial of that question was had in Kidder County District Court on February 1, 1972. A jury verdict for the plaintiffs was brought in for the sum of $8,292.33. Judgment in that amount was thereafter entered.
Defendants' dual motion for judgment notwithstanding the verdict, or for a new trial followed; it was denied in toto. A host of defendants' grievances have now been brought here for review. Not all of the specifications of error will require our attention, however, due to the course we intend the case to take.
The leading issue on this appeal we esteem to be propriety of a portion of the trial court's jury charge. The defendants, (whom we shall for simplicity hereinafter call "sellers") press upon us with skill and zeal the criticism that one of the trial court's instructions obliged the jurors to use an inappropriate guide for measuring damages. With this view we are disposed to agree. The challenged instruction was, we find, inappropriate under the facts.
At the trial, the plaintiffs (hereinafter "buyers") advocated, and the court gave instructions on damages based upon Sec. 32-03-09 NDCC. That section reads:
"For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided *438 by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin."
The sellers resisted use of this statute as the legal basis for damages. Noting that this section, by its own terms, applied only when no other specific law controlled, sellers insisted there was a specifically applicable statute. They claimed Sec. 32-03-13 was singularly designed for this type of case. It states:
"The detriment caused by the breach of an agreement to convey an estate in real property is the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach and the expenses properly incurred in examining the title, and in preparing to enter upon the land, and the amount paid on the purchase price, if any, with interest thereon from the time of the breach."
While we do, as already mentioned, adopt sellers' position that the trial court erred by giving an instruction founded on Sec. 32-03-09, we do not find the alternative suggestion to be appropriate either. On the contrary, we believe the trial court properly resisted sellers' solicitations to give instructions based on Sec. 32-03-13. Use of that statute is warranted only when specific performance is impossible or impracticable. The appellate court in California, recently construed the very statute of that state from which ours was copied; it said:
"A simple reading of the statute discloses that by its explicit terms it is adaptable only to a failure to convey, and not to a delay in conveying." Christensen v. Slawter, 173 Cal.App.2d 325, 343 P.2d 341, 344, 74 A.L.R.2d 567 (1959).
The sellers here rely on the case Missouri Slope Auction v. Wachter, 107 N.W. 2d 349, decided by this court in 1961. We there approved as a measure of damages "the difference between the price to be paid under the contract and the value of the land at the time of the breach." However, in that case, conveyance could not be accomplished under any circumstances. The sellers had agreed to sell property to which they had no title. Here there was no such an impediment. The contract did not failit merely suffered long delay.
The damages in this case arose because, in defiance of their contractual obligation to convey and deliver, the sellers wrongfully occupied and used the real estate. There is a specific statute governing damages in such circumstances. Sec. 32-03-21 is titled "Damages for wrongful occupation of realty" and the pertinent part reads as follows:
"The detriment caused by the wrongful occupation of real property ... is deemed to be the value of the use of the property for the time of such occupation... and the costs, if any, of recovering the possession."
This theory of recovery should have found a place in the court's instructions. Instead, as we have seen, an instruction suited only for breach of contract predicaments that are unaffected by special legislation was used. This constituted misdirection grave enough to require a new trial. Missouri Slope Auction v. Wachter, supra.
Sec. 32-03-21 speaks of "the value of the use" as the proper gauge of recovery for the period of wrongful occupation. This value may be found by either of two routes. The aggrieved party may require the party at fault to make an accounting and deliver over the fruits of the illegitimate possession. Pillsbury v. Streeter, 15 N.D. 174, 107 N.W. 40, 43 (1906). Or he may, at his election, recover the fair rental value of the property. Cotton v. Butterfield, *439 14 N.D. 465, 105 N.W. 236, 240 (1905); Harrison-Daniels Co. v. Aughtry, 309 S.W.2d 879 (Tex.Civ.App.1958); Anno: 7 A.L.R.2d 1204 Sec. 4 (Supplemented 7-12 A.L.R.2d Supp.).
It was also error for the court to instruct that "the measure of damages is the amount which will compensate for all detriment proximately caused by the act or omission whether it could have been anticipated or not." (Emphasis added.) This instruction is for a tort case. The emphasized portion is a verbatim quote from Sec. 32-03-20 entitled "Measure of Damages for Tort." That section reads:
"For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by law, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."
Such an instruction has no place in a contract case where the limit of liability is narrower than in a tort case. Unlike a tortfeasor, a contracting party is not liable for unforeseeable injury consequent to his breach. 22 Am.Jur.2d Damages Sections 56 and 83.
These errors in the jury charge were doubtless partly to blame for what we see as an extravagantly generous verdict. Even giving the facts the most favorable view made possible by all the evidence, admissible or otherwise, the size of the verdict cannot be rationally vindicated.
Certain other issues raised on this appeal pose tentative difficulties for the new trial and hence require our attention. These issues relate to evidence of special damages.
At the first trial evidence of items of claimed special damage met with lively opposition. Resistance was upon grounds that such evidence did not constitute a proper measure of damages, and that there was an absence of support in the pleadings for special damages.
The authorities seem generally to concur in the view that delay in performance of an agreement to convey can be the root of special as well as general damages. Christensen v. Slawter, 173 Cal. App.2d 325, 343 P.2d 341, 346 (1959); 55 Am.Jur., Vendor & Purchaser Sec. 565. Implicit in an agreement to convey is the rudimentary doctrine that performance, unless otherwise specified, must be accomplished in a reasonable time. Unwarranted and unreasonable tardiness of performance may very well result in special damages to the buyer.
Care, however, must be taken that double compensation is not given for the same element of injury, first as general damages, and again as an item of special damages.
"... there can be but one recovery for each element of damages, whether claimed as general or special damages." Shoemaker v. Sonju, 15 N.D. 518, 108 N.W. 42, 44 (1906).
For example, evidence was offered and received at the trial that the buyers did not, during the interim of delay, farm as profitably as previously. It was shown that relying on a timely conveyance they had terminated a lease on a rather large farm. They then had to rent a smaller farm while awaiting the outcome of litigation. The court admitted evidence showing a drop in profits from both crops and livestock attributable to the reduced scope of operations. This was improper. One unlawfully deprived of the use of land should not be permitted to recover not only the profits of the withheld land, but in addition recover lost profits on his own substitute endeavors. That would constitute duplicate recovery for a single injury.
The court also admitted separate testimony showing that buyers paid out the sum of $2,120.00 to lease the smaller farm. This likewise was error. The recorded precedent on the point admonishes us to look coldly upon attempts made to recover *440 the cost of renting other land as an element of damages in cases of this kind. Derbonne v. Burton, 189 So. 473 (La.App. 1939); Smith v. Schrader, 80 Cal.App. 478, 251 P. 967 (1926); Baker v. Puffer, 299 Ill. 486, 132 N.E. 429 (1921)
"... rent paid by the purchaser seeking specific performance, for other premises, after the vendor should have conveyed may not be made the basis of recovery." 81 C.J.S. Specific Performance § 162b, p. 770.
Evidence of several other items of special damage was admitted by the court. This evidence included (1) the expense of locating a new farm, (2) the cost of moving to it, (3) additional expense for school transportation, and (4) extra school tuition paid. It was not error to submit these matters to the juryprovided, of course, they were accompanied by proper instructions.
Recoverable special damages must meet the orthodox text laid down in the celebrated English case Hadley v. Baxendale 156 Eng.Rep. 145 (1854). They must be "such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, as the probable result of the breach of it." Hayes v. Cooley, 13 N.D. 204, 100 N.W. 250 (1905). The burden is upon the party claiming special damages to show that the injury was reasonably within the contemplation of the parties. Harrison-Daniels v. Aughtry, 309 S.W.2d 879, 882 (Tex.Civ.App.1958).
The question of foreseeability of the special damage is generally for the jury.
"The question of whether or not the defendant did in fact foresee, or had reason to foresee, the injury that the plaintiff has suffered is a question of fact for the jury, subject to the usual supervisory power of the court." 5 Corbin on Contracts p. 89.
Evidence of items of purported special damages was challenged at the trial for another claimed infirmity. It was contended that they had not been properly pleaded.
It is a rule of evidence of long standing in this jurisdiction that unless pleaded, special damages are not ordinarily to be allowed. Shoemaker v. Sonju, supra; Russell v. Olson, 22 N.D. 410; 133 N.W. 1030, 1035, 37 L.R.A.,N.S., 1217 (1911); Spaulding v. Loyland, 132 N.W.2d 914, 924 (1964).
The allegations of the buyer's amended complaint do embrace special damages, but only imperfectly. Paragraph V states:
"Plaintiffs, fully relying upon the performance of the said option agreement on the part of the defendants, have sold certain real property and have terminated a lease to property on which they are now residing, and should defendants be unable to carry out the terms and conditions of the option agreement . . . plaintiffs will be damaged in the sum of Twenty Thousand Dollars."
It is doubtful that this language fulfills the requirements of Rule 9(g):
"(g) Special Damage. When items of special damage are claimed, they shall be specifically stated."
However, through discovery proceedings, a more exact disclosure of the nature of the claimed special damages was given to the sellers. As to most of the expense items upon which testimony was allowed, the sellers were amply informed.
The principal object of rule 9(g) is to inform the adverse party of the nature of a claim and thus prevent surprise at the trial. Ellis v. Crockett, 51 Haw. 45, 86, 451 P.2d 814 (1969).
"The underlying and sound justification for [the] rule [requiring special damages to be pleaded] is that the defendant ought to be guarded against surprise at the trial by evidence tending to prove *441 damages of which he had no previous notice." Antokol v. Barber, 248 Mass. 393, 143 N.E. 350, 32 A.L.R. 703 (1924).
But the rule need not be applied with unyielding rigor where the reason for its existence does not subsist. Shoemaker v. Sonju, supra.
In this case, details of nearly all items of claimed special damage had been stated explicitly in answers to interrogatories. As to those, there was no surprise. Moreover, sellers could have seasonably sought a more definite statement but chose not to. Instead they waited in strategic silence to complain for the first time at the trial. Under such circumstances, the buyers are estopped to object on grounds of improper pleading. Great American Indemnity Co. v. Brown, 307 F.2d 306, 308 (CA 5th 1962).
On this appeal we are asked by the sellers to enter judgment in their favor notwithstanding the verdict, or in the alternative grant them a new trial. We believe the interests of justice are best served here by granting the alternative request, since it appears any deficiencies in pleading and proof can be supplied upon retrial. Webster v. McLaren, 19 N.D. 751, 123 N.W. 395 (1909); Olstad v. Stockgrowers Credit Corp., 66 N.D. 416, 266 N.W. 109, 110 (1936); Linington v. McLean County, 146 N.W.2d 45, 49 (1966).
The Order denying motion for judgment notwithstanding the verdict is affirmed; the judgment is reversed and a new trial is ordered.
STRUTZ, C. J., and TEIGEN, PAULSON, and KNUDSON, JJ., concur.
The Honorable RALPH J. ERICKSTAD, Associate Justice, deeming himself disqualified, did not participate; the Honorable RALPH B. MAXWELL, Judge of the First Judicial District, sitting in his stead.